**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**MICHAEL COLLINS SMITH,**

 **Plaintiff,**

 v.                                    **CASE NO. 25-3017-JWL**

**JOHNSON COUNTY, KANSAS,
BOARD OF COMMISSIONERS,
et al.,**

 **Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Michael Collins Smith is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas. Plaintiff has paid the filing fee. Plaintiff's claims relate to his state criminal proceedings in the District Court of Johnson County, Kansas, and the handling of his legal mail while detained at the Johnson County Adult Detention Facility ("JCADF").

Plaintiff summarizes his state criminal proceedings as follows.[1] Plaintiff alleges that Assistant District Attorney ("ADA") Ronnebaum swore under penalty of perjury that Plaintiff intentionally murdered Anthony Shuster with premeditation (Count–1) "without any credible

---

[1]  Plaintiff sets forth in detail the facts underlying his criminal charges and his state court proceedings at Doc. 1–1, at 4–21. He sets forth the background and details regarding the physical altercation that resulted in Shuster's death, and how Plaintiff feared for his own life and was placed at risk after the shooting.

evidence that an actual premeditated murder had occurred and without any eyewitnesses of the shooting." (Doc. 1–1, at 1.) Plaintiff alleges that at his preliminary hearing, ADAs Hill and Andrews "suborned perjury by way of testimony of B.J.G., presented false and misleading evidence, and suppressed exculpatory, inculpatory, and impeaching evidence in violation of *Brady v. Maryland*, in order to attain the requisite standard necessary to bound [sic] [Plaintiff] for trial, again without any evidence of the shooting that led to the death of Anthony Shuster." *Id*. at 2.

Plaintiff alleges that following a jury trial he was convicted of voluntary manslaughter (Count–1) on February 15, 2019, and on his direct appeal the Kansas Court of Appeals ("KCA") reversed this conviction and vacated Plaintiff's 233–month sentence. *Id*. Plaintiff alleges that upon the KCA's mandate, Plaintiff was released from the custody of the Kansas Department of Corrections "to be placed on post-release supervision." *Id*.

Plaintiff alleges that after the case was remanded, ADAs Eaton and Andrews continued Plaintiff's prosecution "by formally requesting that [Plaintiff] be brought back to Johnson County to be tried yet again in the death of Anthony Shuster, this time for voluntary manslaughter (Count–1)." *Id*. Plaintiff alleges that his was done:

> despite knowing that [Plaintiff] acted in self-defense, that the gun used in self-defense was the same model found in the bedroom of Anthony Shuster, that the prosecution suborned perjury, that the prosecution used false and misleading evidence, and that the prosecution in the first trial suppressed key evidence in order to obtain the conviction of [Plaintiff].

*Id*. Plaintiff alleges that on February 9, 2023, he received a favorable termination by way of a dismissal of Count–1. *Id*. Plaintiff alleges that the dismissal "removed the possibility of being vindicated by way of a new trial and exposing the lies and corruption of the first trial." *Id*. at 12.

Plaintiff alleges that despite being released from KDOC custody and being placed on parole pending the outcome of the voluntary manslaughter case, he "was resentenced to 144 months . . . and is now currently under sentence and scheduled to be released in March of 2028." *Id*.

Plaintiff alleges that upon his arrival at the JCADC, he had to surrender his legal mail and all legal materials for inspection. *Id*. at 11. Plaintiff alleges that his "legal work, discovery, legal correspondence from his attorneys, and all necessary legal work were opened, read, inspected, and ransacked by employees of the Sheriff's department outside of Plaintiff's presence. *Id*. Plaintiff alleges that he was forced to either mail his legal mail and correspondence from his attorneys to his brother or face having the items destroyed. *Id*. Plaintiff alleges that afterwards he was subjected to routine "shakedowns" where his legal work was once again opened, viewed, and inspected by deputies conducting the cell inspection outside of Plaintiff's presence. *Id*.

As Count I, Plaintiff alleges malicious prosecution by Johnson County District Attorney Howe and ADAs Ronnebaum, Hill, Andrews and Eaton. *Id*. at 14. Plaintiff alleges that these defendants knew that probable cause did not exist to prosecute Plaintiff for premeditated murder. *Id*. Plaintiff alleges that this case finally terminated in his favor on February 9, 2023, when Count-I was dismissed with prejudice. *Id*. at 15. Plaintiff alleges that Defendants Andrews and Eaton continued to maliciously prosecute Plaintiff for voluntary manslaughter despite knowing that Plaintiff acted in self-defense. *Id*. Plaintiff alleges that he received a favorable termination of the voluntary manslaughter charge when it was dismissed with prejudice on February 9, 2023. *Id*. at 16.

Plaintiff brings his claims in Count II against these same county prosecutors, claiming denial of due process and denial of a fair trial by withholding material exculpatory and

impeachment evidence, and deliberately failing to conduct a constitutionally adequate investigation in violation of the Fourt and Fourteenth Amendments. *Id.*

As Count III, Plaintiff alleges "interference with family" in violation of the First and Fourteenth Amendments. *Id.* at 17. Plaintiff brings this claim against the same state prosecutors. Plaintiff alleges that the prosecutors forced Plaintiff's mother to testify against Plaintiff regarding text messages between them. *Id.* Plaintiff alleges that this deprived Plaintiff's mother of her right to familial association with her son. *Id.* Plaintiff also alleges that his two sons were targeted and compelled to testify against Plaintiff, depriving them of their right to be free from unwarranted government interference with their familial relations without due process of law. *Id.*

Plaintiff names the same state prosecutors in Count IV and alleges a failure to intervene. *Id.* at 17–18. Plaintiff alleges that they failed to intervene to prevent his malicious prosecution. *Id.* at 18. As Count V, Plaintiff alleges that these same defendants participated in a conspiracy to violate his civil rights. *Id.* As Count VI, Plaintiff alleges a supervisory liability claim against Defendant Howe, the Johnson County District Attorney, and the County Commissioners of Johnson County, Kansas. *Id.* at 19. Plaintiff alleges that these two defendants failed to properly supervise and train the defendant assistant district attorneys. *Id.*

Plaintiff's remaining counts are brought against the Johnson County Sheriff, John Doe Sheriff's Deputies 1–10, and the Johnson County Board of Commissioners, and relate to the handling of his legal mail at the JCADF. *Id.* at 20–21. As Count VII, Plaintiff alleges that the Sheriff and Deputies caused Plaintiff's legal mail to be opened and read outside of his presence and conducted regular cell "shakedowns" where his legal mail was removed from envelopes. *Id.* at 20. Plaintiff also alleges that he was forced to mail out important legal documents deemed

unimportant by the Deputies.  *Id*.  As Count VIII,[2] Plaintiff brings a *Monell* claim against the Johnson County Board of County Commissioners.  *Id*.  Plaintiff alleges that the Board had a policy, practice, or custom of unconstitutional misconduct in serious felony investigations, including the suppression of evidence, the subornation of perjury, the interference with forensic testing of exculpatory and inculpatory evidence, the protecting of witnesses who've made false statements, and the committing of perjury by the Assistant District Attorneys as to the charges to be brought against particular defendants.  *Id*.  Plaintiff also alleges a policy, practice, or custom of failing to adequately supervise, discipline, and train District Attorneys and Assistant District Attorneys prosecuting felonies.  *Id*.

Plaintiff names as defendants: Johnson County, Kansas, Board of Commissioners; Steve Howe, Johnson County District Attorney; Sarah Hill, Johnson County Assistant District Attorney; Xavier Andrews, Johnson County Assistant District Attorney; Cathy Eaton, Johnson County Assistant District Attorney; Julia Ronnebaum, Johnson County Assistant District Attorney; John Doe 1–10, Johnson County Sheriff's Office Deputies; and Roger Roe 1–10, Johnson County Sheriff's Office Supervisors.  Plaintiff alleges that he is "entitled to monetary relief."  *Id*. at 14.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28

---

[2]  Plaintiff includes two counts named "Count VII," therefore the Court will refer to the second one as Count VIII.

U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round

out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Rule 8

Plaintiff uses a form for filing a § 1983 action, but merely references another attached complaint. In filing an amended complaint, Plaintiff must use only the Court-approved form and must comply with Fed. R. Civ. P. 8's pleading standards. Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis. Only a generalized statement of the facts from which the defendant may form a

responsive pleading is necessary or permissible." *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007) (emphasis omitted) (quoting *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

### 2. Rules 18 and 20

Plaintiff brings claims against the state prosecutors involved in his state criminal proceedings.  He also brings claims against staff at the JCADF regarding the handling of his legal mail.  Plaintiff has set forth unrelated claims in his Complaint.  Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint. Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***.  Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately). In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences. Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### 3. Heck Bar and Habeas Nature of Claim

To the extent Plaintiff challenges the validity of his sentence in his state criminal case, his

federal claim must be presented in habeas corpus.  "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.  *Heck v. Humphrey,* 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies).  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *see Woodford v. Ngo,* 548 U.S. 81, 92 (2006); *Rose v. Lundy,* 455 U.S. 509, 518–19 (1982); Therefore, any claim challenging his state sentence is not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question.  *Heck,* 512 U.S. 477.  If Plaintiff has been convicted and a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of that conviction, the claim may be barred by *Heck*.  In *Heck*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless

10

the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487.    In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order.  *Id*. at 486–87.

Plaintiff has not alleged that his conviction or sentence has been invalidated.  Instead, he alleges malicious prosecution and due process violations based on the prosecution and ultimate dismissal of Count I in his criminal proceedings.

A jury convicted Plaintiff of the on sudden quarrel voluntary manslaughter of A.S., the imperfect self-defense attempted voluntary manslaughter of B.G, aggravated child endangerment of K.S., and criminal possession of a firearm.  *State v. Smith*, 495 P.3d 1045, 2021 WL 4501835, at *1, *6 (Kansas Court of Appeals Oct. 1, 2021).  The trial court sentenced Plaintiff to a controlling sentence of 279 months' imprisonment, followed by 36 months of postrelease supervision.  *Id*. at *6.  Plaintiff appealed, raising multiple errors by the trial court, and the Kansas Court of Appeal ("KCA") considered Plaintiff's arguments and found "error only in the trial court's failure to instruct the jury on imperfect self defense involuntary manslaughter as a lesser included offense of Smith's intentional first-degree murder charge for the killing of A.S." [3] *Id*. at *1.

As a result, the KCA reversed Plaintiff's conviction for the on sudden quarrel voluntary manslaughter of A.S. under K.S.A. 2016 Supp. 21-5404(a)(1), vacated his corresponding sentence, and remanded the case to the trial court for a new trial on whether Plaintiff committed:

---

[3]  The KCA noted that the trial court granted Plaintiff's request to instruct the jury on intentional second-degree murder and voluntary manslaughter on sudden quarrel as lesser included offenses to his intentional first-degree murder charge for the killing of A.S., but denied Plaintiff's request to instruct the jury on imperfect self-defense involuntary manslaughter as stated under K.S.A. 2016 Supp. 21-5405(a)(4) as a lesser included offense.  *Id*. at *6.

(1) an on sudden quarrel voluntary manslaughter of A.S. under K.S.A. 2020 Supp. 21–5404(a)(1); or (2) an imperfect self-defense involuntary manslaughter under K.S.A. 2020 Supp. 21-5405(a)(4). *Id.* In reversing the voluntary manslaughter conviction, the KCA found that the trial court's failure to instruct the jury on imperfect self-defense involuntary manslaughter was not harmless. *Id.* at *12. However, the KCA also found that "the trial court's instructional error did not infringe upon Smith's constitutional rights." *Id.* at *11. The KCA affirmed Plaintiff's conviction for imperfect self-defense attempted voluntary manslaughter of B.G, aggravated child endangerment of K.S., and criminal possession of a firearm.

On remand, the State did not pursue a retrial on the voluntary manslaughter charge and the district court dismissed the charge with prejudice in February 2023. *State v. Smith*, 556 P.3d 926, 65 Kan. App. 2d 19, 20 (2024). The district court resentenced Plaintiff after redesignating a primary conviction under K.S.A. 21–6819(b)(5). *Id.* at 19. Plaintiff appealed, and the KCA set forth the issues on appeal as follows:

> [T]he district court sentenced him to a total of 279 months' imprisonment followed by 36 months' postrelease supervision. This sentence was calculated by categorizing Smith as a criminal history score A and designating his primary crime as the voluntary manslaughter conviction on which he was given 233 months' imprisonment, the standard presumptive sentence under the KSGA. The district court ordered the sentences imposed on the remaining lesser convictions—32, 6, and 8 months, respectively—to run consecutive to the primary term of imprisonment. . . .

> [O]ur court reversed Smith's conviction for voluntary manslaughter and remanded the case to the district court for a new trial on the voluntary manslaughter charge. . . .

> The State did not pursue a retrial on the voluntary manslaughter charge on remand and the district court dismissed the charge with prejudice in February 2023.

> Following the dismissal, Plaintiff opposed resentencing of his three remaining convictions affirmed by this court on direct appeal.

Smith argued the district court did not have jurisdiction to correct his sentence because he already served his originally imposed prison sentences for those three, non-primary convictions—that is, the 46 months' imprisonment imposed for the three lesser crimes—and he sought immediate release. The Kansas Department of Corrections (KDOC) released him to postrelease supervision on May 10, 2022, and he continued to be held in the Johnson County Detention Center on a detainer.

After some back and forth from the parties, the district court held a hearing on March 24, 2023, and found Smith's sentence was unlawful because it did "not have his criminal history score applied to the base sentence, rendering it illegal due to failure to comply with [K.S.A. 21-6819]."  After noting an illegal sentence may be corrected at any time, the district court opined "the issue appears to be whether [Smith] is still serving his sentence.  If [he] is still on post-release supervision, he is still serving his sentence."  The district court determined it had jurisdiction to correct Smith's sentence because Smith was still serving his postrelease supervision, noting the supervision period ran from May 10, 2022, to May 10, 2024.  Smith moved for reconsideration, but the district court denied his request and his motion for immediate release.  Ultimately, the district court resentenced Smith to 144 months' imprisonment, designating the attempted voluntary manslaughter conviction as the primary crime on which to apply his criminal history.

*Id*. at 20–21.  The KCA affirmed, finding that the district court did not err in resentencing Plaintiff.  *Id*. at 21, 23 ("When an appellate court reverses a conviction designated as the primary crime in a multiple conviction case, resentencing in the district court is mandatory under K.S.A. 21–6819(b)(5), despite whether the reversed charge is retried or dismissed on remand.").

Plaintiff's claims suggest that he disagrees with the recalculation of his sentence following the dismissal of Count 1 on remand.  To the extent Plaintiff challenges the calculation of his sentence in his state criminal case, his federal claim must be presented in habeas corpus. A § 2241 petition is appropriate when a prisoner challenges the execution of his sentence rather than the validity of his conviction or sentence.  *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).  "[A] § 1983 action is a proper remedy for a state prisoner who is making a

constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*" *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983.  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.") (citation omitted)).  Therefore, any claim challenging the calculation of his state sentence is not cognizable in a § 1983 action.  *See also Frey v. Adams Cty. Court Servs.*, 267 F. App'x 811, 813 (10th Cir. 2008) (unpublished) (finding claim regarding calculation of sentence must be brought under § 2241 "[a]nd insofar as he seeks damages, he has no cause of action until he obtains relief from the sentence") (citing *Heck*, 512 U.S. 477 and *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (challenge to consecutive sentences barred by *Heck* as challenge to sentence's duration)).

It also appears that Plaintiff's claims would be barred by *Heck*, based on his remaining three convictions.  This situation is distinguishable from a case where the charges were dismissed and plaintiff entered a plea agreement on *unrelated* charges.  *Cf. Butler v. Compton*, 482 F.3d 1277, 1281 (10th Cir. 2007) ("Mr. Butler's conviction on unrelated charges may not form the basis for the application of *Heck* where there is no challenge to that conviction in Mr. Butler's § 1983 action.").  Plaintiff in this case is seeking damages for the time he was detained and incarcerated.  However, Plaintiff was detained based on the incident for which he was ultimately convicted.  *See Wilkins v. City of Tempe*, No. CV 09-00752-PHX-MHM, 2010 WL 94116, at *3 (D. Ariz. Jan. 6, 2010) (distinguishing *Butler* and finding that "[t]he fact that the

crimes which Plaintiff ultimately plead guilty to were not the ones with which he was originally charged is irrelevant; his conviction, unlike the one in *Butler*, arises out of the same incident that led to the original charges"). If this Court were to find that Plaintiff was entitled to damages for being detained and incarcerated, the invalidity of his criminal convictions would be necessarily implicated. *See Wingo v. Mullins*, No. 09-CV-445-GKF-TLW, 2009 WL 4404278, at *2 (N.D. Okla. Nov. 25, 2009) ("To the extent Plaintiff claims that the conduct of Defendants . . . destroyed his business, the Court concludes that any damage to Plaintiff's business which arose prior to his convictions is 'inextricably intertwined' with the allegations resulting in his conviction.") (citation omitted). "The Court finds Plaintiff has failed to demonstrate that he suffered an actual compensable injury unrelated to his conviction and imprisonment which would survive the holding of *Heck*." *Id.* Plaintiff should show good cause why his claims are not barred by *Heck*.

### 4. Malicious Prosecution

Plaintiff alleges malicious prosecution. A § 1983 malicious prosecution claim includes five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis removed) (citation omitted). The Supreme Court has clarified that "a criminal prosecution terminates favorably, for the purposes of a § 1983 malicious prosecution claim, when the prosecution ends without a conviction." *Id.* at 1311 (citing *Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 1335 (2022)).

This Court has previously found that where multiple counts were included in the criminal action and the plaintiff was found guilty on one of the counts, the original action did not terminate in favor of the plaintiff. *See Livingston v. Unified Gov't of Wyandotte Cty.*, 2023 WL 4560901, at *4 (D. Kan. July 17, 2023). The Court found that:

> Moreover, Plaintiff cannot demonstrate that no probable cause supported his arrest or prosecution where he was found guilty of one charge. *See Van De Weghe v. Chambers*, 569 F. App'x 617, 619–20 (10th Cir. 2014) (finding Tenth Circuit has not found that "a claim for malicious prosecution lies when one charge is supported by probable cause but other simultaneous charges arising from the same set of facts are not"). Further, the existence of probable cause in a civil action such as this is determined based on all evidence known to the arresting officer, whether or not it would have been admissible at trial. "Under federal law, 'the exclusionary rule does not apply in § 1983 cases,' because the use of illegally obtained evidence (as opposed to an unlawful search or seizure itself) is not a constitutional violation." *Klein v. Steinkamp*, 44 F.4th 1111, 1116 (8th Cir. 2022) (quoting *Lingo v. City of Salem*, 832 F.3d 953, 959-60 (9th Cir. 2016), and citing *see Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)); *see also Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023) ("While the malicious prosecution claim *does* require a showing that the government acted without probable cause, Shrum's allegations go to probable cause for the *search*. They do not concern probable cause for the 'arrest, continued confinement, or prosecution.' "). Plaintiff fails to state a claim for malicious prosecution.

*Id*. at *4–5.

The Court in *Livingston* held that the plaintiff's fabrication of evidence claim failed for the same reasons. The Court held that:

> The constitutional right at issue with a fabrication of evidence claim is the "due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021). "To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty." *Id*. (citing *see Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018); *see also Zahrey v. Coffey*, 221 F.3d 342,

349 (2d Cir. 2000)). Thus, to state a fabrication of evidence claim, a plaintiff must allege (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt. *Id.* (citing *Warnick*, 895 F.3d at 753; *Heck v. Humphrey*, 512 U.S. 477, 478 (1994)).

There first problem Plaintiff has is that a fabrication of evidence claim involves the same favorable termination requirement as a malicious prosecution claim. *McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019). As discussed above, Plaintiff does not meet this requirement.

*Id.* at *5.

The Court also found in *Livingston* that the plaintiff's request for compensatory damages was subject to dismissal.[4]  The Court found that:

Section 1997e(e) . . . provides in pertinent part:
>    No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). This provision bars a prisoner from bringing a claim for compensatory damages without a prior showing of a physical injury. *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.

---

[4]  Plaintiff states "SEE ATTACHED COMPLAINT" in his Complaint under the section for "Relief."  (Doc. 1, at 5.) The attached complaint also fails to set forth a specific request for relief.  Instead, Plaintiff includes a paragraph titled "DAMAGES," where he states he is entitled to monetary relief and  sets forth his damages, including:

loss of freedom; physical pain and suffering; severe mental anguish; emotional distress; loss of family relationships; severe psychological damage; loss of property; legal expenses; loss of income and career opportunities; humiliation; indignities, and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, familial relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled to monetary relief.

(Doc. 1–1, at 14.)

> *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying § 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).
>
> Plaintiff's request for compensatory damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e). Plaintiff has not described any physical injury that was caused by the alleged deprivations of his constitutional rights. Plaintiff attempts to overcome this bar in two ways. First, he refers to "the physical injury of being detained without probable cause from June 8, 2019 until November 25, 2019." (Doc. 13, at 8.) The mere fact of detention is not a physical injury. Second, Plaintiff attempts to demonstrate physical injury by cobbling on a claim for contracting COVID while detained. However, as discussed below, he fails to state an actionable claim tying his injury to a constitutional violation. The Court finds that Plaintiff's claim for actual or compensatory damages is barred.

*Id*. at *6.

In ruling on the plaintiff's motion for reconsideration, the Court also cited *Turner v. Schultz*, where the court concluded that § 1997e(e) applied to the plaintiff's malicious prosecution claims in spite of the fact that he did not challenge prison conditions. *Livingston v. Unified Gov't of Wyandotte Cty.*, 2023 WL 567201, at *3 (D. Kan. Sept. 1, 2023) (citing *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222–23 (D. Colo. 2001)). In *Turner*, where the plaintiff argued that the prosecution caused him "severe emotional stress and loss of enjoyment of life," the court held that:

> Mr. Turner first responds that the PLRA does not apply because his case is not based on prison conditions. I disagree. Two subsections of the statute refer specifically to suits "with respect to prison conditions." *See* 42 U.S.C. § 1997e(a) ("No action shall be brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") (emphasis added); 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought *with respect to prison conditions* under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.") (emphasis added). However, the statute's provisions act independently. Although Congress restricted some clauses to prison condition suits, that provision does not apply in Mr. Turner's case. *See generally Archuleta v. Marshall,* No. 00–2033, 2000 WL 1005245 (10th Cir. July 20, 2000) (§ 1997e(e) applied to claim for use of excessive force although suit did not challenge prison conditions); *Hailey v. Kaiser,* No. 99–7046, 1999 WL 1009614 (10th Cir. Nov. 8, 1999) (§ 1997e(e) applied to claim for deliberate indifference to safety or security although suit did not challenge prison conditions); *Flanery v. Wagner,* No. 98–3235, 1999 WL 314615 (10th Cir. May 19, 1999) (§ 1997e(e) applied to alleged Fourth Amendment violation not involving prison conditions); *Craig v. Eberly,* 164 F.3d 490 (10th Cir.1998) (construing § 1997e(e) in accordance with the plain meaning of the section). I conclude that § 1997e(e) applies to Mr. Turner's malicious prosecution claims, although he does not challenge prison conditions.

Mr. Turner next argues that the requirements of the PLRA only apply to the suit as a whole, and not to each individual claim. Therefore, because he alleges that he suffered physical injury, he need not show a new injury connected to each individual claim. I again disagree.

The statute does not state whether a separate physical injury must be alleged for each claim for relief, or whether one injury suffices for the entire suit regardless of the number of claims brought. Mr. Turner cited, and I found, no case directly on point. Mr. Turner cites *Marrie v. Nickels,* 70 F.Supp.2d 1252, 1264 (D. Kan. 1999) to support his position that only one injury per case need be pled. In *Marrie,* United States military prisoners sued prison officials for alleged violations of the First, Fifth, and Eighth Amendments arising from living conditions, treatment by prison staff, and disciplinary measures. The Court concluded that one plaintiff's claim for compensatory damages based on alleged retaliation was barred by § 1997e(a), as he did not allege he suffered any physical injury as a result of the defendants' retaliation. The Court allowed that same plaintiff, however, to seek compensatory and punitive damages for sexual assault claims. The Court held that sexual assault was an adequate "physical injury" for purposes of § 1997e(e). Thus, *Marrie* required that a separate physical injury

19

> support each claim. *Marrie,* therefore, does not support Mr. Turner's interpretation of the statute.
>
> *Marrie* is, however, consistent with Congressional intent. The legislative history of the PLRA did not explicitly state Congress's intent in adopting the statute. *See* Karen M. Klotz, Comment, *The Price of Civil Rights: The Prison Litigation Reform Act's Attorney Fee–Cap Provision as a Violation of Equal Protection of the Laws,* 3 Temp.L.Rev. 759 (2000). However, the comments of legislators involved in passage of the Act show an intent to limit the number of prisoner–filed complaints, the number of meritless suits, and the excessive micro–management of the nation's prisons by the federal courts. *See id.;* Sharone Levy, Note, *Balancing Physical Abuse by the System Against Abuse of the System: Defining "Imminent Danger" Within the Prison Litigation Reform Act,* 6 Iowa L.Rev. 361 (2000). It would be contrary to this stated intent to allow a prisoner to bring any number of claims to court on the back of one injury. Because Mr. Turner has failed to show a physical injury in connection with his malicious prosecution claims, I dismiss those claims against Defendants Scott, King, Mooneyham, and Greco.

*Turner*, 130 F. Supp. 2d at 1223–24. Plaintiff should show good cause why his malicious prosecution claim should not be dismissed for failure to state a claim.

### 5. Familial Association

Plaintiff alleges "interference with family" in violation of the First and Fourteenth Amendments, alleging that the prosecutors forced Plaintiff's mother to testify against him regarding text messages between them, and compelled his two sons to testify against Plaintiff. The Tenth Circuit recently held that:

> When a plaintiff seeks relief for tortious executive action in violation of substantive due process rights under the Fourteenth Amendment, we ask whether the government action "deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). To satisfy the shocks the conscience standard, a plaintiff must show "deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* "The behavior complained of must be egregious and outrageous." *Id.* at 1261. In the context of a familial association claim, plaintiffs must satisfy the "shocks judicial

> conscience standard" by demonstrating: "(1) intent to interfere with the family relationship and (2) an unwarranted and severe intrusion." *Halley v. Huckaby*, 902 F.3d 1136, 1154 (10th Cir. 2018).

*Estate of Alire by Alire v. Wihera*, 2024 WL 5183300, at *7 (10th Cir. 2024) (unpublished).

Plaintiff has not alleged unwarranted and severe intrusions. *See Dela Cruz v. Palacios*, 406 F. App'x 172, 173 (9th Cir. 2010) (finding that where "an officer encounters fast paced circumstances presenting competing public safety obligations," only actions demonstrating that the officer acted with a "purpose to harm" unrelated to legitimate law enforcement objectives will suffice to establish a claim) (citation omitted). The Eighth Circuit has held that "[n]either the Supreme Court not this court has clearly held wrongful prosecution and incarceration of a family member violates a right to familial association." *Estate of Nash v. Folsom*, 92 F.4th 746, 759 (8th Cir. 2024) (citation omitted); *see also In re O'Brien*, 728 F.2d 1172, 1174 (8th Cir. 1984) (finding argument that "testimony before the grand jury would violate his first amendment right to freedom of association by compromising his social and family relationships" was without merit). Plaintiff's familial association claim is subject to dismissal.

### 6. Defendants

#### A. Supervisors

Plaintiff names the Sheriff and Roger Roe 1–10, Johnson County Sheriff's Office Supervisors, as defendants. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be

21

based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).  An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).  Plaintiff's claims against the Sheriff and supervisors are subject to dismissal.

## B. Prosecutors

Plaintiff names the county prosecutors as defendants. The Supreme Court has held that prosecutors enjoy absolute immunity "for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Neighbors v. Lawrence Police Dep't.*, 2016 WL 3685355, at *9 (D. Kan. July 12, 2016) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 (1976)). "This prosecutorial immunity is limited, however, to actions that 'involve the prosecutor's role as advocate . . . rather than his [or her] role as administrator or investigative officer . . ..' " *Id.* (quoting *Imbler*, 424 U.S. at 491 (citation and internal quotation marks omitted)).

In *Neighbors*, the plaintiff alleged that the prosecutor violated his due process rights by forcing him to trial without probable cause or any evidence on the record to show any crime had been committed. *Id.* at *10. This Court held that the prosecutor's filing and prosecution of the charges "are advocacy functions subject to absolute prosecutorial immunity." *Id.* (citations omitted). The Court found that:

> And, even if City Prosecutor Lehwald prosecuted plaintiff "without probable cause" or without "any evidence" of a crime, he still enjoys prosecutorial immunity because his acts are advocacy functions on behalf of the City of Lawrence. *See Imbler*, 424 U.S. at 413, 421–22, 431 (explaining that allegations of malice or an absence of probable cause are insufficient to overcome absolute prosecutorial immunity and holding that a prosecutor was entitled to absolute immunity from claims that he knowingly used false testimony and suppressed material evidence at trial); *see also Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n.4 (10th Cir. 1991) (explaining that "[w]hether the claim involves withholding evidence, failing to correct a misconception or instructing a witness to testify evasively, absolute immunity from civil damages is the rule for prosecutors"), *cert. denied*, 502 U.S. 1091 (1992). Because City Prosecutor Lehwald has absolute prosecutorial immunity, the court dismisses him from this action.

*Id.*

Even if Plaintiff's claims are not barred by *Heck*, and he could show a favorable termination for purposes of his malicious prosecution claim, he would need to clarify his claims against the prosecutors and state the nature of the function they were performing when the alleged constitutional violations occurred. *See Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (finding that absolute immunity does not protect the act of "fabricating evidence during the preliminary investigation of a crime" because prosecutors are not acting as advocates during that stage) (citations omitted)). The function of the prosecutors will determine the immunity that applies. "[S]ince a detective who fabricates evidence during the preliminary investigation of a crime 'is entitled to qualified immunity,' prosecutors who do the same are likewise 'protected only by qualified immunity.'" *Id.* at 1117–18 (citation omitted).

### C.  Johnson County Board of Commissioners

Plaintiff has named the Johnson County Board of Commissioners as a defendant. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also id.* at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")). Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (quoting *Monell*, 436 U.S. at 694). To establish municipal liability a plaintiff must demonstrate the existence of a "municipal policy or custom." *Id.* (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id.*

at n.9 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).

"[T]he Supreme Court has held that in 'limited circumstances,' a failure to train can be the basis for liability under § 1983." *Horocofsky*, 2022 WL 1421554, at *29 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  Only when a municipality's failure to train employees evidences a " 'deliberate indifference' to the rights of inhabitants" can a failure to train be considered "a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 389).  To show deliberate indifference, a plaintiff must show that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm. *Id.* (citation omitted).

However, this Court has recently held that a board of county commissioners is not a proper party to a suit based upon allegations of misconduct by jail deputies.  *See Ponce v. Sedgwick Cty. Sheriff's Office*, 2025 WL 958256, at *7–8 (D. Kan. March 31, 2025) (finding that Kansas statutes give sheriffs, not county commissions, the authority to hire, train, and supervise deputies and operate a jail).

## IV. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims

or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3017-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 21, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **May 21, 2025**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

26

**IT IS SO ORDERED**.

**Dated April 21, 2025, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**