IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL COLLINS SMITH,

        Plaintiff,

     v.                              CASE NO. 25-3017-JWL

JOHNSON COUNTY, KANSAS,
BOARD OF COMMISSIONERS,
et al.,

        Defendants.

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas. Plaintiff has paid the filing fee. On April 21, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 5) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC. The Court also granted Plaintiff an opportunity to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 10). The Court's screening standards are set forth in the MOSC.

## I. Nature of the Matter before the Court

Plaintiff's factual allegations are set forth in detail in the MOSC.[1] Plaintiff's claims relate to his state criminal proceedings in the District Court of Johnson County, Kansas. Plaintiff names

---

[1] Plaintiff sets forth in detail the facts underlying his criminal charges and his state court proceedings at Doc. 1–1, at 4–21. He sets forth the background and details regarding the physical altercation that resulted in Shuster's death, and how Plaintiff feared for his own life and was placed at risk after the shooting. *Id.*, *see also* Doc. 10, at 10–15.

the state prosecutors and the Johnson County Board of Commissioners as defendants.  Plaintiff seeks compensatory and punitive damages.  (Doc. 10, at 5.)

Plaintiff alleges that on February 4, 2017, Assistant District Attorney ("ADA") Ronnebaum swore under penalty of perjury that Plaintiff intentionally murdered Anthony Shuster with premeditation "without any evidence that an actual premeditated murder had occurred and without any eyewitnesses . . .."  *Id*. at 2.  Plaintiff alleges that at his preliminary hearing on August 8, 2017, ADAs Hill and Andrews "suborned perjury by way of testimony of BJG, by allowing BJG to deny any and all knowledge of any drug dealing done in the apartment she resided in with Anthony Shuster, while having full knowledge that BJG was lying about the cocaine evidence found by investigators in BJG's bedroom, and testify [sic] that cocaine evidence, which was exculpatory, inculpatory, and impeaching did not exist in her bedroom."  *Id*.  Plaintiff alleges that this testimony was eventually refuted at trial by an officer on the scene who testified that such evidence existed and was sent to the Johnson County crime lab for testing and fingerprinting.  *Id*.  Plaintiff alleges that ADAs Hill and Andrews suppressed this evidence and refused to turn over any results of the testing.  Plaintiff alleges that Hill and Andrews also presented false and misleading evidence in the form of a Nike coat that they alleged was worn by BJG.  *Id*.

Plaintiff alleges that he was convicted of voluntary manslaughter on February 15, 2019, and sentenced to 233 months of imprisonment.  *Id*. at 2.  Plaintiff alleges that his conviction was reversed by the Kansas Court of Appeals on direct appeal in October 2021, and his sentence was vacated.  *Id*.  Plaintiff alleges that he "obtained a favorable termination of the voluntary manslaughter charge, which stemmed from the original murder charge, when it was dismissed on February 9, 2023" after he "filed for immunity from prosecution because of self-defense."  *Id*.

As Count I, Plaintiff alleges malicious prosecution by the state prosecutors, alleging that he was charged and prosecuted for premeditated murder without probable cause. *Id*. at 3. Plaintiff alleges that the prosecutors continued to prosecute Plaintiff for voluntary manslaughter after his conviction was reversed, despite knowing that Plaintiff acted in self-defense. *Id*. Plaintiff alleges that he received a favorable termination of the voluntary manslaughter conviction on February 9, 2023. *Id*.

Plaintiff alleges a due process violation as Count II, alleging the denial of a fair trial based on the withholding of material exculpatory and impeachment evidence and the failure to conduct an adequate investigation. *Id*. Plaintiff alleges that the prosecutors failed to turn over exculpatory and impeaching evidence in the form of cocaine found in the bedroom of the State's witness—BJG—and the test results from the crime lab. *Id*. Plaintiff alleges that the prosecutors suborned perjury at his preliminary hearing by allowing BJG to deny that there were drugs in the apartment. *Id*. Plaintiff alleges that at his trial, the officer on the scene testified that cocaine was confiscated, processed, and sent to the Johnson County crime lab for testing. *Id*.

As Count III, Plaintiff alleges that the state prosecutors failed to intervene to prevent his malicious prosecution and the denial of due process. *Id*. at 4. Plaintiff alleges a civil rights conspiracy in violation of 42 U.S.C. § 1983 as Count IV, alleging that the prosecutors worked in concert with BJG to elicit perjured testimony and to suppress exculpatory evidence. *Id*. at 7. Plaintiff alleges supervisory liability against DA Howe as Count V. *Id*. at 7–8. As Count VI, Plaintiff alleges a *Monell* claim against the Johnson County Board of Commissioners. *Id*. at 8.

Plaintiff alleges interference with family relationships in Count VII. *Id*. at 9. Plaintiff alleges that the prosecutors forced Plaintiff's mother to testify against him regarding text messages

between the two of them.  *Id.*  Plaintiff also alleges that his two sons were directed to testify for the prosecution and his sons' biological mother was forced to make them available to testify.  *Id.*

## II. DISCUSSION

### 1. Heck Bar and Habeas Nature of Claim

The Court advised Plaintiff in the MOSC that to the extent Plaintiff challenges the validity of his sentence in his state criminal case, his federal claim must be presented in habeas corpus. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies).  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982); Therefore, any claim challenging his state sentence is not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question.  *Heck*, 512 U.S. 477.  If Plaintiff has

4

been convicted and a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of that conviction, the claim may be barred by *Heck*. In *Heck*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87.

Plaintiff has not alleged that his conviction or sentence has been invalidated. Instead, he alleges malicious prosecution and due process violations based on the prosecution and ultimate dismissal of Count I in his criminal proceedings.

A jury convicted Plaintiff of the on sudden quarrel voluntary manslaughter of A.S., the imperfect self-defense attempted voluntary manslaughter of B.G, aggravated child endangerment of K.S., and criminal possession of a firearm. *State v. Smith*, 495 P.3d 1045, 2021 WL 4501835, at *1, *6 (Kansas Court of Appeals Oct. 1, 2021). The trial court sentenced Plaintiff to a controlling sentence of 279 months' imprisonment, followed by 36 months of postrelease supervision. *Id*. at *6. Plaintiff appealed, raising multiple errors by the trial court, and the Kansas Court of Appeal ("KCA") considered Plaintiff's arguments and found "error only in the trial court's failure to instruct the jury on imperfect self defense involuntary manslaughter as a lesser

included offense of Smith's intentional first-degree murder charge for the killing of A.S." [2]  *Id*. at *1.

As a result, the KCA reversed Plaintiff's conviction for the on sudden quarrel voluntary manslaughter of A.S. under K.S.A. 2016 Supp. 21-5404(a)(1), vacated his corresponding sentence, and remanded the case to the trial court for a new trial on whether Plaintiff committed:  (1) an on sudden quarrel voluntary manslaughter of A.S. under K.S.A. 2020 Supp. 21–5404(a)(1); or (2) an imperfect self-defense involuntary manslaughter under K.S.A. 2020 Supp. 21-5405(a)(4).  *Id*.  In reversing the voluntary manslaughter conviction, the KCA found that the trial court's failure to instruct the jury on imperfect self-defense involuntary manslaughter was not harmless.  *Id*. at *12.  However, the KCA also found that "the trial court's instructional error did not infringe upon Smith's constitutional rights."  *Id*. at *11.  The KCA affirmed Plaintiff's conviction for imperfect self-defense attempted voluntary manslaughter of B.G, aggravated child endangerment of K.S., and criminal possession of a firearm.

On remand, the State did not pursue a retrial on the voluntary manslaughter charge and the district court dismissed the charge with prejudice in February 2023.  *State v. Smith*, 556 P.3d 926, 65 Kan. App. 2d 19, 20 (2024).  The district court resentenced Plaintiff after redesignating a primary conviction under K.S.A. 21–6819(b)(5).  *Id*. at 19.  Plaintiff appealed, and the KCA set forth the issues on appeal as follows:

> [T]he district court sentenced him to a total of 279 months' imprisonment followed by 36 months' postrelease supervision.  This sentence was calculated by categorizing Smith as a criminal history score A and designating his primary crime as the voluntary manslaughter conviction on which he was given 233 months' imprisonment, the standard presumptive sentence under the KSGA.

---

[2]  The KCA noted that the trial court granted Plaintiff's request to instruct the jury on intentional second-degree murder and voluntary manslaughter on sudden quarrel as lesser included offenses to his intentional first-degree murder charge for the killing of A.S., but denied Plaintiff's request to instruct the jury on imperfect self-defense involuntary manslaughter as stated under K.S.A. 2016 Supp. 21-5405(a)(4) as a lesser included offense.  *Id*. at *6.

The district court ordered the sentences imposed on the remaining lesser convictions—32, 6, and 8 months, respectively—to run consecutive to the primary term of imprisonment. . . .

[O]ur court reversed Smith's conviction for voluntary manslaughter and remanded the case to the district court for a new trial on the voluntary manslaughter charge. . . .

The State did not pursue a retrial on the voluntary manslaughter charge on remand and the district court dismissed the charge with prejudice in February 2023.

Following the dismissal, Plaintiff opposed resentencing of his three remaining convictions affirmed by this court on direct appeal. Smith argued the district court did not have jurisdiction to correct his sentence because he already served his originally imposed prison sentences for those three, non-primary convictions—that is, the 46 months' imprisonment imposed for the three lesser crimes—and he sought immediate release. The Kansas Department of Corrections (KDOC) released him to postrelease supervision on May 10, 2022, and he continued to be held in the Johnson County Detention Center on a detainer.

After some back and forth from the parties, the district court held a hearing on March 24, 2023, and found Smith's sentence was unlawful because it did "not have his criminal history score applied to the base sentence, rendering it illegal due to failure to comply with [K.S.A. 21-6819]." After noting an illegal sentence may be corrected at any time, the district court opined "the issue appears to be whether [Smith] is still serving his sentence. If [he] is still on post-release supervision, he is still serving his sentence." The district court determined it had jurisdiction to correct Smith's sentence because Smith was still serving his postrelease supervision, noting the supervision period ran from May 10, 2022, to May 10, 2024. Smith moved for reconsideration, but the district court denied his request and his motion for immediate release. Ultimately, the district court resentenced Smith to 144 months' imprisonment, designating the attempted voluntary manslaughter conviction as the primary crime on which to apply his criminal history.

*Id*. at 20–21. The KCA affirmed, finding that the district court did not err in resentencing Plaintiff.

*Id*. at 21, 23 ("When an appellate court reverses a conviction designated as the primary crime in a

multiple conviction case, resentencing in the district court is mandatory under K.S.A. 21–6819(b)(5), despite whether the reversed charge is retried or dismissed on remand.").

Plaintiff's claims suggest that he disagrees with the recalculation of his sentence following the dismissal of Count 1 on remand.  To the extent Plaintiff challenges the calculation of his sentence in his state criminal case, his federal claim must be presented in habeas corpus.  A § 2241 petition is appropriate when a prisoner challenges the execution of his sentence rather than the validity of his conviction or sentence.  *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).  "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983.  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.") (citation omitted)).  Therefore, any claim challenging the calculation of his state sentence is not cognizable in a § 1983 action.  *See also Frey v. Adams Cty. Court Servs.*, 267 F. App'x 811, 813 (10th Cir. 2008) (unpublished) (finding claim regarding calculation of sentence must be brought under § 2241 "[a]nd insofar as he seeks damages, he has no cause of action until he obtains relief from the sentence") (citing *Heck*, 512 U.S. 477 and *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (challenge to consecutive sentences barred by *Heck* as challenge to sentence's duration)).

It also appears that Plaintiff's claims would be barred by *Heck*, based on his remaining three convictions. This situation is distinguishable from a case where the charges were dismissed

and plaintiff entered a plea agreement on *unrelated* charges. *Cf. Butler v. Compton*, 482 F.3d 1277, 1281 (10th Cir. 2007) ("Mr. Butler's conviction on unrelated charges may not form the basis for the application of *Heck* where there is no challenge to that conviction in Mr. Butler's § 1983 action."). Plaintiff in this case is seeking damages for the time he was detained and incarcerated. However, Plaintiff was detained based on the incident for which he was ultimately convicted. *See Wilkins v. City of Tempe*, No. CV 09-00752-PHX-MHM, 2010 WL 94116, at *3 (D. Ariz. Jan. 6, 2010) (distinguishing *Butler* and finding that "[t]he fact that the crimes which Plaintiff ultimately plead guilty to were not the ones with which he was originally charged is irrelevant; his conviction, unlike the one in *Butler*, arises out of the same incident that led to the original charges"). If this Court were to find that Plaintiff was entitled to damages for being detained and incarcerated, the invalidity of his criminal convictions would be necessarily implicated. *See Wingo v. Mullins*, No. 09-CV-445-GKF-TLW, 2009 WL 4404278, at *2 (N.D. Okla. Nov. 25, 2009) ("To the extent Plaintiff claims that the conduct of Defendants . . . destroyed his business, the Court concludes that any damage to Plaintiff's business which arose prior to his convictions is 'inextricably intertwined' with the allegations resulting in his conviction.") (citation omitted). "The Court finds Plaintiff has failed to demonstrate that he suffered an actual compensable injury unrelated to his conviction and imprisonment which would survive the holding of *Heck*." *Id*.

The Court ordered Plaintiff to show good cause why his claims are not barred by *Heck*. Plaintiff has failed to show good cause, and his Amended Complaint fails to cure this deficiency found in the MOSC.

## 2.  Malicious Prosecution

Plaintiff alleges malicious prosecution. A § 1983 malicious prosecution claim includes five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2)

the original action terminated in favor of the plaintiff; (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis removed) (citation omitted). The Supreme Court has clarified that "a criminal prosecution terminates favorably, for the purposes of a § 1983 malicious prosecution claim, when the prosecution ends without a conviction." *Id*. at 1311 (citing *Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 1335 (2022)).

This Court has previously found that where multiple counts were included in the criminal action and the plaintiff was found guilty on one of the counts, the original action did not terminate in favor of the plaintiff. *See Livingston v. Unified Gov't of Wyandotte Cty.*, 2023 WL 4560901, at *4 (D. Kan. July 17, 2023). The Court found that:

> Moreover, Plaintiff cannot demonstrate that no probable cause supported his arrest or prosecution where he was found guilty of one charge. *See Van De Weghe v. Chambers*, 569 F. App'x 617, 619–20 (10th Cir. 2014) (finding Tenth Circuit has not found that "a claim for malicious prosecution lies when one charge is supported by probable cause but other simultaneous charges arising from the same set of facts are not"). Further, the existence of probable cause in a civil action such as this is determined based on all evidence known to the arresting officer, whether or not it would have been admissible at trial. "Under federal law, 'the exclusionary rule does not apply in § 1983 cases,' because the use of illegally obtained evidence (as opposed to an unlawful search or seizure itself) is not a constitutional violation." *Klein v. Steinkamp*, 44 F.4th 1111, 1116 (8th Cir. 2022) (quoting *Lingo v. City of Salem*, 832 F.3d 953, 959-60 (9th Cir. 2016), and citing *see Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)); *see also Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023) ("While the malicious prosecution claim *does* require a showing that the government acted without probable cause, Shrum's allegations go to probable cause for the *search*. They do not concern probable cause for the 'arrest, continued confinement, or prosecution.' "). Plaintiff fails to state a claim for malicious prosecution.

*Id*. at *4–5.

The Court in *Livingston* held that the plaintiff's fabrication of evidence claim failed for the same reasons. The Court held that:

> The constitutional right at issue with a fabrication of evidence claim is the "due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021). "To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty." *Id.* (citing *see Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018); *see also Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)). Thus, to state a fabrication of evidence claim, a plaintiff must allege (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt. *Id.* (citing *Warnick*, 895 F.3d at 753; *Heck v. Humphrey*, 512 U.S. 477, 478 (1994)).
>
> There first problem Plaintiff has is that a fabrication of evidence claim involves the same favorable termination requirement as a malicious prosecution claim. *McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019). As discussed above, Plaintiff does not meet this requirement.

*Id.* at *5.

The Court also found in *Livingston* that the plaintiff's request for compensatory damages was subject to dismissal.[3] The Court found that:

> Section 1997e(e) . . . provides in pertinent part:

---

[3] Plaintiff states "SEE ATTACHED COMPLAINT" in his Complaint under the section for "Relief." (Doc. 1, at 5.) The attached complaint also fails to set forth a specific request for relief. Instead, Plaintiff includes a paragraph titled "DAMAGES," where he states he is entitled to monetary relief and sets forth his damages, including:

> loss of freedom; physical pain and suffering; severe mental anguish; emotional distress; loss of family relationships; severe psychological damage; loss of property; legal expenses; loss of income and career opportunities; humiliation; indignities, and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, familial relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled to monetary relief.

(Doc. 1–1, at 14.)

> No Federal civil action may be brought by a prisoner
> confined in a jail, prison, or other correctional
> facility, for mental or emotional injury suffered while
> in custody without a prior showing of physical
> injury.

> 42 U.S.C. § 1997e(e). This provision bars a prisoner from bringing
> a claim for compensatory damages without a prior showing of a
> physical injury. *See Perkins v. Kansas Dept. of Corrections*, 165
> F.3d 803, 807 (10th Cir. 1999). Section 1997e(e) applies regardless
> of the nature of the underlying substantive violation asserted.
> *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert.
> denied*, 536 U.S. 904 (2002) (applying § 1997e(e) to the plaintiff's
> First Amendment claim for free exercise of religion).

> Plaintiff's request for compensatory damages is subject to dismissal
> as barred by 42 U.S.C. § 1997e(e). Plaintiff has not described any
> physical injury that was caused by the alleged deprivations of his
> constitutional rights. Plaintiff attempts to overcome this bar in two
> ways. First, he refers to "the physical injury of being detained
> without probable cause from June 8, 2019 until November 25,
> 2019." (Doc. 13, at 8.) The mere fact of detention is not a physical
> injury. Second, Plaintiff attempts to demonstrate physical injury by
> cobbling on a claim for contracting COVID while detained.
> However, as discussed below, he fails to state an actionable claim
> tying his injury to a constitutional violation. The Court finds that
> Plaintiff's claim for actual or compensatory damages is barred.

*Id.* at *6.

In ruling on the plaintiff's motion for reconsideration, the Court also cited *Turner v. Schultz*, where the court concluded that § 1997e(e) applied to the plaintiff's malicious prosecution claims in spite of the fact that he did not challenge prison conditions. *Livingston v. Unified Gov't of Wyandotte Cty.*, 2023 WL 567201, at *3 (D. Kan. Sept. 1, 2023) (citing *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222–23 (D. Colo. 2001)). In *Turner*, where the plaintiff argued that the prosecution caused him "severe emotional stress and loss of enjoyment of life," the court held that:

> Mr. Turner first responds that the PLRA does not apply because his
> case is not based on prison conditions. I disagree. Two subsections
> of the statute refer specifically to suits "with respect to prison

conditions." *See* 42 U.S.C. § 1997e(a) ("No action shall be brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") (emphasis added); 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.") (emphasis added). However, the statute's provisions act independently. Although Congress restricted some clauses to prison condition suits, that provision does not apply in Mr. Turner's case. *See generally Archuleta v. Marshall,* No. 00–2033, 2000 WL 1005245 (10th Cir. July 20, 2000) (§ 1997e(e) applied to claim for use of excessive force although suit did not challenge prison conditions); *Hailey v. Kaiser,* No. 99–7046, 1999 WL 1009614 (10th Cir. Nov. 8, 1999) (§ 1997e(e) applied to claim for deliberate indifference to safety or security although suit did not challenge prison conditions); *Flanery v. Wagner,* No. 98–3235, 1999 WL 314615 (10th Cir. May 19, 1999) (§ 1997e(e) applied to alleged Fourth Amendment violation not involving prison conditions); *Craig v. Eberly,* 164 F.3d 490 (10th Cir.1998) (construing § 1997e(e) in accordance with the plain meaning of the section). I conclude that § 1997e(e) applies to Mr. Turner's malicious prosecution claims, although he does not challenge prison conditions.

Mr. Turner next argues that the requirements of the PLRA only apply to the suit as a whole, and not to each individual claim. Therefore, because he alleges that he suffered physical injury, he need not show a new injury connected to each individual claim. I again disagree.

The statute does not state whether a separate physical injury must be alleged for each claim for relief, or whether one injury suffices for the entire suit regardless of the number of claims brought. Mr. Turner cited, and I found, no case directly on point. Mr. Turner cites *Marrie v. Nickels,* 70 F.Supp.2d 1252, 1264 (D. Kan. 1999) to support his position that only one injury per case need be pled. In *Marrie,* United States military prisoners sued prison officials for alleged violations of the First, Fifth, and Eighth Amendments arising from living conditions, treatment by prison staff, and disciplinary measures. The Court concluded that one plaintiff's claim for compensatory damages based on alleged retaliation was

barred by § 1997e(a), as he did not allege he suffered any physical injury as a result of the defendants' retaliation. The Court allowed that same plaintiff, however, to seek compensatory and punitive damages for sexual assault claims. The Court held that sexual assault was an adequate "physical injury" for purposes of § 1997e(e). Thus, *Marrie* required that a separate physical injury support each claim. *Marrie,* therefore, does not support Mr. Turner's interpretation of the statute.

*Marrie* is, however, consistent with Congressional intent. The legislative history of the PLRA did not explicitly state Congress's intent in adopting the statute. *See* Karen M. Klotz, Comment, *The Price of Civil Rights: The Prison Litigation Reform Act's Attorney Fee–Cap Provision as a Violation of Equal Protection of the Laws,* 3 Temp.L.Rev. 759 (2000). However, the comments of legislators involved in passage of the Act show an intent to limit the number of prisoner–filed complaints, the number of meritless suits, and the excessive micro–management of the nation's prisons by the federal courts. *See id.;* Sharone Levy, Note, *Balancing Physical Abuse by the System Against Abuse of the System: Defining "Imminent Danger" Within the Prison Litigation Reform Act,* 6 Iowa L.Rev. 361 (2000). It would be contrary to this stated intent to allow a prisoner to bring any number of claims to court on the back of one injury. Because Mr. Turner has failed to show a physical injury in connection with his malicious prosecution claims, I dismiss those claims against Defendants Scott, King, Mooneyham, and Greco.

*Turner*, 130 F. Supp. 2d at 1223–24. Plaintiff has failed to show good cause why his malicious prosecution claim should not be dismissed for failure to state a claim.

### 3. Conspiracy

To state a claim for conspiracy, a plaintiff must include in his complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.* Here, Plaintiff provides no factual information whatsoever to demonstrate any type of agreement was made between anyone. Furthermore, his claim would be barred by *Heck* as set forth above.

The Tenth Circuit has held that where the plaintiff alleged that he was injured by a conspiracy between state officials:

> This recast conspiracy claim also fails because the only possible injury that can be inferred from the alleged misconduct is either Kirby's resulting criminal conviction itself or damages arising therefrom. Any such claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994), which holds that a plaintiff may not recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff can first prove that the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Kirby has not made such a showing.

*Kirby v. Dallas Cty. Adult Probation Dep't*, 359 F. App'x 27, 33 (10th Cir. 2009) (unpublished); *see also Dunn v. Harper Cty.*, 520 F. App'x 723, 726 (10th Cir. 2013) (unpublished) (where plaintiff alleged defense counsel conspired with court personnel, court affirmed district court's decision that "all of Dunn's claims are barred by *Heck*").

### 4. Familial Association

Plaintiff alleges interference with family relationships in Count VII, alleging that the prosecutors forced Plaintiff's mother to testify against him regarding text messages between them, and compelled his two sons to testify against Plaintiff. Plaintiff alleges that this violated his First and Fourteenth Amendment rights. The Tenth Circuit recently held that:

> When a plaintiff seeks relief for tortious executive action in violation of substantive due process rights under the Fourteenth Amendment, we ask whether the government action "deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). To satisfy the shocks the conscience standard, a plaintiff must show "deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* "The behavior complained of must be egregious and outrageous." *Id.* at 1261. In the context of a familial association claim, plaintiffs must satisfy the "shocks judicial

15

> conscience standard" by demonstrating: "(1) intent to interfere with the family relationship and (2) an unwarranted and severe intrusion." *Halley v. Huckaby*, 902 F.3d 1136, 1154 (10th Cir. 2018).

*Estate of Alire by Alire v. Wihera*, 2024 WL 5183300, at *7 (10th Cir. 2024) (unpublished).

Plaintiff has not alleged unwarranted and severe intrusions. *See Dela Cruz v. Palacios*, 406 F. App'x 172, 173 (9th Cir. 2010) (finding that where "an officer encounters fast paced circumstances presenting competing public safety obligations," only actions demonstrating that the officer acted with a "purpose to harm" unrelated to legitimate law enforcement objectives will suffice to establish a claim) (citation omitted). The Eighth Circuit has held that "[n]either the Supreme Court not this court has clearly held wrongful prosecution and incarceration of a family member violates a right to familial association." *Estate of Nash v. Folsom*, 92 F.4th 746, 759 (8th Cir. 2024) (citation omitted); *see also In re O'Brien*, 728 F.2d 1172, 1174 (8th Cir. 1984) (finding argument that "testimony before the grand jury would violate his first amendment right to freedom of association by compromising his social and family relationships" was without merit). The Court found in the MOSC that Plaintiff's familial association claim was subject to dismissal.

Plaintiff has failed to show good cause why this claim should not be dismissed.

### 5. *Monell* Claim, Supervisory Liability, and Failure to Intervene

The Court has found that Plaintiff failed to state a constitutional violation. Therefore, his *Monell* and supervisory liability claims also must fail. Where a plaintiff fails to demonstrate a constitutional violation, a claim based on municipal or supervisory liability must also be dismissed. *See Scott v. City of Wichita*, 109 F. App'x 201, 204–05 (10th Cir. 2004) (unpublished) (citing *Myers v. Okla. County Bd. of County Com'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998) (stating that "[i]t is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if a jury finds that the municipal employee committed no constitutional violation");

16

*Winters v. Bd. of County Comm'rs,* 4 F.3d 848, 855 (10th Cir. 1993) (stating that supervisors may be liable only for participating or acquiescing in a constitutional violation committed by subordinates)).

Likewise, "because the Court finds no constitutional violation for the act itself, failure to intervene to prevent the act is also not a constitutional violation." *Delaney v. Zmuda*, 2021 WL 843237, at *3 (D. Kan. 2021); *see also Duncan v. Quinlin*, 2015 WL 1726802, at *5 (D. Colo. 2015) (for there to be a failure to intervene, it follows that "there must exist an underlying constitutional violation") (citing *Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005); *Sanders v. City of Union Springs,* 207 Fed. Appx. 960, 965–66 (11th Cir. 2006); *Ford v. Fleming,* 229 F.3d 1163, 2000 WL 1346392 (10th Cir. Sept. 19, 2000) (unpublished op.) (holding that claims involving a failure to intervene were precluded by the jury's conclusion that no constitutional violations had taken place)).

### 6. Prosecutorial Immunity

In the MOSC, the Court noted that the state prosecutors enjoy absolute immunity "for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Neighbors v. Lawrence Police Dep't.*, 2016 WL 3685355, at *9 (D. Kan. July 12, 2016) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 (1976)). "This prosecutorial immunity is limited, however, to actions that 'involve the prosecutor's role as advocate . . . rather than his [or her] role as administrator or investigative officer . . ..' " *Id*. (quoting *Imbler*, 424 U.S. at 491 (citation and internal quotation marks omitted)).

The Court held in the MOSC that "[e]ven if Plaintiff's claims are not barred by *Heck*, and he could show a favorable termination for purposes of his malicious prosecution claim, he would

need to clarify his claims against the prosecutors and state the nature of the function they were performing when the alleged constitutional violations occurred." (Doc. 5, at 24) (citing *see Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (finding that absolute immunity does not protect the act of "fabricating evidence during the preliminary investigation of a crime" because prosecutors are not acting as advocates during that stage) (citations omitted))). The function of the prosecutors will determine the immunity that applies. "[S]ince a detective who fabricates evidence during the preliminary investigation of a crime 'is entitled to qualified immunity,' prosecutors who do the same are likewise 'protected only by qualified immunity.'" *Id*. at 1117–18 (citation omitted).

In his Amended Complaint, Plaintiff alleges that the prosecutors also acted as complaining witnesses. The Supreme Court has held that "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, see *Burns, supra,* at 496, 111 S. Ct. 1934, when the prosecutor makes statements to the press, *Buckley v. Fitzsimmons,* 509 U.S. 259, 277, 113 S. Ct. 2606, 125 L.Ed.2d 209 (1993), or when a prosecutor acts as a complaining witness in support of a warrant application, *Kalina, supra,* at 132, 118 S.Ct. 502 (SCALIA, J., concurring)." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S. Ct. 855, 861, 172 L. Ed. 2d 706 (2009).

This Court need not decide whether or not the prosecutors are entitled to absolute or qualified immunity because the claims are barred by *Heck*. Therefore, this matter is dismissed for failure to state a claim. *See Smith v. Veterans Admin*., 636 F.3d 1306, 1312 (10th Cir. 2011) ("Our precedent holds that the dismissal of a civil rights suit for damages based on prematurity under *Heck* is for failure to state a claim.") (citing *Davis v. Kan. Dep't of Corr.,* 507 F.3d 1246, 1248, 1249 (10th Cir.2007)); *see also Mendia v. City of Wellington*, 432 F. App'x 796, at n.1 (10th Cir.

2011) (unpublished) (noting that a dismissal based on *Heck* is for failure to state a claim) (citation omitted)).

IT IS THEREFORE ORDERED BY THE COURT that this matter is **dismissed** for failure to state a claim.

IT IS SO ORDERED.

Dated August 25, 2025, in Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE